Katherine L. PRICE, Plaintiff–Appellant,

v.

CITY OF FORT WAYNE,
Defendant–Appellee.

No. 96–2249.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 1996.

Decided June 27, 1997.

Ronald E. James (argued), Jack E. Morris, Benson, Pantello, Morris & James, Fort Wayne, IN, for Plaintiff–Appellant.

J. Timothy McCauley (argued), Helmke, Beams, Boyer & Wagner, Fort Wayne, IN, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

In 1993 Congress passed, and the President signed, the Family & Medical Leave Act (FMLA or Act). Pub.L. 103–3, Feb. 5, 1993, 107 Stat. 6. Congress found that the Act was needed to help balance the burden of caretaking among family members and also to balance the demands of the workplace with the demands of the family. *See* 29 U.S.C. § 2601. Divisions of labor along gender lines were recognized as a powerful force in the American family affecting, in particular, the working lives of women. Congress sought to mandate a flexible leave allotment for medical and family reasons for all men and women working at least 1250 hours a year at firms employing 50 or more employees during at least 20 weeks of the year. *See* 29 U.S.C. § 2611(2), (4).

The goal was not to supplant employer-established sick leave and personal leave policies, but to provide leave for more uncommon and, presumably, time-consuming events such as having or adopting a child or suffering from what is termed a "serious health condition." And all this was to be accomplished with the assurance that an employee's job, or an equivalent one, would be waiting upon his or her return. It is the "serious health condition" with which we are concerned here. The court below held that an assemblage of diagnoses including elevated blood pressure, hyperthyroidism, back pain, severe headaches, sinusitis, infected cyst, sore throat, swelling throat, coughing and feelings of stress and depression could not, as a matter of law, constitute a "serious health condition." We find that, while these conditions in this case may not rise to the level of a "serious medical condition" as a matter of *fact* (a question necessarily left for the finder of fact), they are not barred from doing so as a matter of *law.*

Katherine Price worked for the City of Fort Wayne Department of Neighborhoods and Citizens Advocate from 1986 until 1994 when she was terminated for excessive absences. This case was pursued originally under a number of legal frameworks against a number of persons. Only the FMLA claim against the City of Fort Wayne (City) remains before us. The district court granted the City's motion for summary judgment, finding that Price did not suffer from a "serious health condition" and thus was not afforded the protections of the FMLA. We review *de novo* and vacate.

### I. Serious Health Condition

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Department of

Labor regulations[1] have sought to answer the question "What is a 'serious health condition'..." in the following way:

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

(1) Inpatient care ... including any period of incapacity ... or any subsequent treatment in connection with such inpatient care; or

(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity ... of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, ... or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

(ii) Any period of incapacity due to pregnancy, or for prenatal care.

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, ...

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

(iv) A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective....

(v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider ... either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, ...

29 C.F.R. § 825.114.

Price does not allege a period of inpatient care, a pregnancy or a chronic serious health condition under the Act. Thus, we focus exclusively on § 825.114(a)(2)(i). There is no dispute that Price was under the continuing care of her doctor, Jonathan Gentile. She saw him on August 1, 18 and 24, 1994 and on September 2, 7, 9, 14 and 22 of 1994. Price received a thyroid ultrasound on August 22, 1994, a thyroid scan on August 29, 1994, an excision of a mass (diagnosed as a benign infected cyst) on September 2, 1994, a needle biopsy of her thyroid on September 23, 1994 and finally, a CT scan of her brain, her brain stem and sinuses, also on September 23, 1994. Whether this series of visits and procedures constitutes "[a] serious health condition involving continuing treatment by a health care provider" depends on the answer to the following question: Can several diagnoses, if temporally linked, no one of which rises alone to the level of a serious health condition, if taken together, constitute a serious health condition?

The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life. It does so by recognizing that there will be times in a person's life when that person is incapable of performing her work duties for medical reasons. Whether these medical reasons take

1. Price's claim arose under the interim regulations which define a serious health condition, in part, as "[a]ny period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider." 29 C.F.R. § 825.114(a)(2) (7-1-94 Edition). Since the result is the same under either the interim or the final regulations, we discuss only the final regulations. Thus we hope to avoid having to repeat our analysis.

the form of one discrete illness, such as cancer, or the form of several different and seemingly unrelated illnesses all afflicting a single individual at the same time, such as in Price's case, is of no moment to the purposes of the FMLA. Thus we answer the question "yes." After all, it is not the disease that receives leave from work; it is the person. And how can one's ability to perform at work be seriously impaired by a single serious illness but not by multiple illnesses having a serious impact? The answer, of course, is that it cannot; the disability is related to the cumulative impacts of illness on one's body and mind.

■ Simply saying that multiple diagnoses can, together, give rise to a "serious health condition" does not, however, resolve the issue. Just because they can does not mean they *do*. Although the issue is close, Price has submitted enough evidence to withstand summary judgment on this point. Dr. Gentile swears in his affidavit that Price came to his office in "an alarming condition." He concludes that she "was on the edge of a break-down, both physically and mentally;" that "there was no way [Price] could perform her job, due to her mental and physical state, and . . . that to attempt to continue to work in her condition would be seriously detrimental to her health." Coming, as this does, unrebutted by appropriate [2] medical testimony, it remains for the trier-of-fact to decide if Price's multiple diagnoses taken together created a serious health condition. It will be important to consider, among other things, the specific guidelines provided by the Department of Labor regulations. For example, what was Price's period of incapacity? Did the treatment she received meet the requirements set forth in § 825.114(b)?

Both the parties and the district court devote considerable time and energy to citing or distinguishing other FMLA cases from Price's situation. Hence, we will briefly address these cases. In *Seidle v. Provident Mut. Life Ins. Co.*, 871 F.Supp. 238 (E.D.Pa. 1994), the employee stayed home to care for her ill son. The *Seidle* court held that the plaintiff could not show that her son had a "serious health condition" because he had

been incapacitated (from attending daycare) for only three days, not the statutory four or more. *Id.* at 243–44. Further, the plaintiff took her son to the doctor on only one occasion; therefore, he was not receiving "continuing treatment by a health care provider." *Id.* at 244. Price's doctor ordered her to forgo work for a three week period; this easily surpasses the four-day requirement. And, as we have noted, Price saw her doctor on many occasions and was under his continuing treatment. In *Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028 (M.D.Tenn.), the court found no serious health condition because the plaintiff failed to present evidence that her doctor ordered her to stay away from work. Instead, she submitted an after-the-fact statement by her doctor that "it was reasonable for someone to miss three or four days for her type of illness" and that she felt " 'too sick to work.' " *Id.* at 1037. Once again, Dr. Gentile ordered Price not to go in to work for three weeks. Finally, in *Bauer v. Dayton–Walther Corp.*, 910 F.Supp. 306 (E.D.Ky.1996), the plaintiff suffered from rectal bleeding over a prolonged period of time. While certainly an alarming symptom, it apparently did not prevent Bauer from performing normally at work. In fact, Bauer admitted as much with respect to several specific days in question. Thus, unlike Price's allegations, Bauer's condition was not currently affecting his capabilities at work.

## II. Notice to City of FMLA Applicability

The City also attempts to challenge Price's eligibility for FMLA leave on more technical grounds. The City charges that she failed to provide sufficient information to put the City on notice that she required FMLA leave and that she failed to provide the statutory 30–day notice.

■ Price filled out the City-provided leave request form and indicated that the cause was medical need. She attached a doctor's note requiring her to take the time off. This was sufficient information to put the City on notice that this was a possible FMLA leave situation. *See Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 760, 764

2. We discuss below the City's use of a City-employed doctor.

(5th Cir.1995). It was then the City's responsibility to inquire further. *See* 29 C.F.R. § 825.303(b); *Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 828 (N.D.Ind.1995).

The City contends that by asking for paid leave only, and not also for unpaid leave, Price foreclosed the inference that she might be interested in FMLA leave. But the Department of Labor regulations repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave. For example, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). Further, "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee." 29 U.S.C. § 825.208(a). In *Manuel* the plaintiff was not even aware of the existence of the Act. *Manuel,* 66 F.3d at 760. Whether Price was aware of the Act is neither known nor particularly relevant. The FMLA does not require that an employee give notice of a desire to invoke the FMLA. Rather, it requires that the employee give notice of *need* for FMLA leave. This kind of notice is given when the employee requests leave for a covered reason. After a notice of this sort the employer can inquire further to determine if the FMLA applies.

The City pursues this issue by pointing out that Price never requested unpaid leave even when prompted to do so by the City. The City's letter of instruction, however, restricted her ability to successfully request unpaid leave by requiring that such a request "correspond with the City doctor's recommendation for time off." Because the City doctor found that Price could return to work, she would have had no basis under the letter to further pursue unpaid leave. Thus, the City's argument that Price failed to request FMLA leave (which is unpaid) or to adequately notify the City of her eligibility or interest in FMLA leave cannot be supported by Price's failure to specifically seek unpaid leave.

■ The employee must provide notice to the employer in a timely manner when the need for leave can be foreseen. The FMLA states with respect to notice that:

> In any case in which the necessity for leave ... is foreseeable based on planned medical treatment, the employee—
>
> . . . .
>
> (B) shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave ... except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable.

29 U.S.C. § 2612(e)(2). The City objects to Price's leave request because it did not provide 30 days notice. The City argues that, since she was able to work five hours the day before her leave began, she obviously could have worked thirty more days and then gone on leave. According to her doctor, Price could not delay thirty days before taking her leave. Therefore, she was required to give "such notice as [was] practicable." Whether Price gave the notice required is necessarily a question of fact, linked to her illness and its manifestations. *See Manuel,* 66 F.3d at 764. We note that Price's array of illnesses consisted of interrelated maladies that might be expected to worsen very quickly. High blood pressure, headaches and stress in particular are closely related and may wax and wane in unison. It is therefore a question of fact whether Price's notice to the City was sufficiently timely to trigger an FMLA inquiry.

### III. City Employed Doctor for Second Opinion

■ An employer is entitled to verification of the need for medical leave. *See* 29 U.S.C. § 2613. If the employer doubts the certification provided by the employee's personal physician, the employer "may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer." 29 U.S.C. § 2613(c)(1). However, the health care provider chosen by the employer "*shall not be employed on a*

*regular basis by the employer.*" 29 U.S.C. § 2613(c)(2) (emphasis added). When Price submitted her leave request, the City sent her a letter informing her that to have her leave approved she must have the opinion of her doctor confirmed by a doctor furnished by the City. She was "directed to contact the Risk Management Department to obtain a second opinion from a City doctor with regard to [her] suitability for light office duty." Under the terms of the Act, however, the use of an employer-associated doctor for the second or third opinions is expressly prohibited. Thus, the City cannot gain support from its doctor's evaluation of her as fit to work. Under the Act the City doctor's opinion is excluded from consideration.

## IV. Conclusion

Price's FMLA claim must be vacated and remanded to the district court. There are disputed material questions of fact. Price's medical condition requires further development to determine if she suffered from a "serious health condition." That determination, in turn, will help to establish whether the notice Price gave to the City was sufficiently timely under the circumstances. The opinion of the City doctor is insufficient to determine Price's medical condition.

The grant of summary judgment is VACATED and this case is REMANDED for further proceedings not inconsistent with this opinion.