United States Court of Appeals
For the First Circuit



No. 97-2244

MARK DUCKWORTH,

Plaintiff, Appellant,

v.

PRATT & WHITNEY, INC.,

Defendant, Appellee.


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]


Before

Lynch, Circuit Judge,

Campbell and Bownes, Senior Circuit Judges.



Helen Norton, with whom Donna R. Lenhoff, Janet S.
Chung, National Partnership For Women & Families, Peter L.
Thompson and Law Offices of Ronald Coles, were on brief, for
appellant.
Richard G. Moon, with whom Jonathan Shapiro, Melinda
J. Caterine, and Moon, Moss, McGill, Hayes & Shapiro, P.A. were
on brief, for appellee.
Leif G. Jorgenson, Attorney, United States Department
of Labor, with whom Marvin Krislov, Deputy Solicitor of Labor
for National Operations, Steven J. Mandel, Associate Solicitor,
and William J. Stone, Counsel for Appellate Litigation, were on
brief, for United States Secretary of Labor, amicus curiae.
Catherine K. Ruckelshaus, Sara E. Rios, Patricia A.
Shiu, Catherine R. Albiston, and Robin Runge on brief for
National Employment Law Project, Employment Law Center (a
project of the Legal Aid Society of San Francisco), National
Council of Jewish Women, United Mine Workers of America, Equal
Rights Advocates, Center for Women Policy Studies, Union of
Needletrades, Industrial & Textile Employees, Women Employed,
American Federation of State, County and Municipal Employees,
International Federation of Professional and Technical
Engineers, American Federation of Teachers, American
Association of University Women, RESOLVE, Service Employees
International Union, American Association of Retired Persons,
National Women's Law Center, American Civil Liberties Union of
Massachusetts, and 9to5, National Association of Working Women,
amici curiae.
Ann Elizabeth Reesman, Robert E. Williams, and
McGuiness & Williams on brief for Equal Employment Advisory
Council, amicus curiae.
Loretta M. Smith and New England Legal Foundation on
brief for Associated Industries of Massachusetts, Business and
Industry Association of New Hampshire, Connecticut Business and
Industry Association and Maine Chamber and Business Alliance,
amici curiae.



July 14, 1998

LYNCH, Circuit Judge. The facts alleged in this case
are simple: that Pratt & Whitney refused to rehire Mark
Duckworth because he had a "poor" attendance rating resulting
from his fifty-two day absence from work in 1994 caused by a
serious health condition, an absence protected by the federal
Family and Medical Leave Act (FMLA), 29 U.S.C. 2601-54, and
its state counterpart, Maine's Family Medical Leave
Requirements, Me. Rev. Stat. Ann. tit. 26, 843-48 (West
1997). Duckworth says the refusal to rehire violated these
laws because the employer's decision was based on Duckworth's
use of statutorily protected leave. Duckworth's complaint was
dismissed for failure to state a claim pursuant to Fed. R. Civ.
P. 12(b)(6). We reverse and reinstate the lawsuit.
I. We state the facts as they are alleged in Duckworth's
complaint, which we take to be true for the purposes of a
motion to dismiss. See Salois v. Dime Sav. Bank, 128 F.3d 20,
22 (1st Cir. 1997).
Duckworth was employed by a Pratt & Whitney
manufacturing facility in North Berwick, Maine from 1980 until
December 1994, when he was laid off. Attendant to the layoff,
one of Duckworth's former supervisors completed an "Employment
Termination Record" sometime around January 6, 1995. The
Termination Record had a line entitled "Rehire Status." On
that line, the supervisor wrote that Duckworth's attendance was
"poor." Nearly two years later, on October 17, 1996, Duckworth
unsuccessfully applied to Pratt & Whitney for a job. 
Duckworth's complaint states that the "poor" attendance rating
was the basis for Pratt & Whitney's refusal to rehire him. 
Duckworth alleges that the "poor" rating resulted from his
taking fifty-two days of medical leave in 1994, leave that was
protected by the FMLA, and that Pratt & Whitney's refusal to
rehire him thus interfered with his FMLA-protected right to
take medical leave.
We take it as given that the 1994 leave was covered
by the FMLA. Apparently, an accident left Duckworth with a
punctured lung and broken ribs, which caused him to be absent
from work from June 20, 1994 to August 11, 1994. The effects
of those injuries and of the medications he took caused
Duckworth to be absent a second time, from August 31, 1994 to
September 22, 1994. He was under his physician's treatment
throughout. It is also undisputed that Duckworth suffered from
a "serious health condition" as defined by 29 U.S.C. 2611(11)
at the time of the absences. Further, Pratt & Whitney concedes
that Duckworth was an "eligible employee" within the meaning of
2611(2) at the time he took leave and that Pratt & Whitney
was a covered "employer" within the meaning of 2611(4).
II. Duckworth brought suit in the United States District
Court for the District of Maine in August 1997. He alleged
that the employer had willfully discriminated against him for
having exercised his FMLA-protected right to take medical
leave, in violation of 29 U.S.C. 2615 and its Maine analogue. 
That section of the FMLA, entitled "Prohibited Acts," provides:
(a) Interference with rights
(1) Exercise of rights
It shall be unlawful for any
employer to interfere with,
restrain, or deny the exercise
of or the attempt to exercise,
any right provided under this
subchapter.

29 U.S.C. 2615(a)(1).
Duckworth also relied on a regulation promulgated by
the United States Department of Labor (DOL) that makes it clear
that employers may not take a prospective employee's past use
of FMLA-protected leave into account in hiring decisions. That
regulation provides:
An employer is prohibited from
discriminating against employees or
prospective employees who have used FMLA
leave. . . . [E]mployers cannot use the
taking of FMLA leave as a negative factor
in employment actions, such as hiring,
promotions or disciplinary actions . . . .

29 C.F.R. 825.220(c). Because he is entitled to protection
under this regulation, Duckworth says he may bring an action
under 29 U.S.C. 2617(a) to enforce those rights. In this,
the DOL agrees with him.
The district court dismissed the action for failure
to state a claim on which relief may be granted, basing its
reasoning on the provision of the Act creating a private right
of action:
An action . . . may be maintained against
any employer . . . by any one or more
employees for and in behalf of -- 
(A) the employees; or
(B) the employees and other employees
similarly situated.

29 U.S.C. 2617(a)(2). The district court reasoned that
because Duckworth had volunteered for a layoff, his claim arose
from his status as a prospective employee, not as a current,
eligible employee. The district court noted that the
enforcement provisions of the Act created a private remedy only
for "employees." The district court reasoned that the term
"employees" is not ambiguous, but inherently applies only to
current employees (thus rejecting DOL's interpretation of the
term to include prospective employees), and that Duckworth had
no cause of action because he was not a current employee. The
court noted that if Congress had intended to include job
applicants within the meaning of the FMLA, it could have
expressly included job applicants within the statute's
coverage, as it did in the Americans with Disabilities Act
(ADA), 42 U.S.C. 12101-12213. The federal claim having been
dismissed, the court also dismissed, without prejudice, the
pendent state claim.
III.
We review the district court's dismissal order de
novo. See Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir.
1996).
Although this case is a significant one for
individuals and employers affected by the FMLA, it turns on a
relatively straightforward and limited question of statutory
construction, and then on deference to administrative
lawmaking. For the purposes of its motion to dismiss, Pratt &
Whitney essentially concedes that the actions described by
Duckworth's complaint may have violated 29 U.S.C. 2615, which
makes it "unlawful for any employer to interfere with,
restrain, or deny the exercise of or the attempt to exercise,
any right" protected by the FMLA. But, Pratt & Whitney argues,
he has no judicial forum available, only an administrative one.
Pratt & Whitney correctly notes that Congress
provided several mechanisms for enforcing the FMLA. First,
Congress provided "employees" an express private right of
action to enforce the Act. See 29 U.S.C. 2617(a)(2). The
Secretary of Labor has authority to bring civil actions against
violators. See id. 2617(b). Aggrieved individuals may file
an administrative complaint with the DOL. See id. 
2617(b)(1). Hence, Pratt & Whitney argues, if Duckworth has
a claim at all, he must rely on administrative enforcement
because he was not an "employee" at the time of the violation, 
but only a prospective employee. 
Thus, the question is whether Duckworth may avail
himself of the Act's private right of action, a right of action
that is limited to "employees." The district court determined
that the Act provides a private remedy only for those employees
who suffer adverse action at the time they are employed by the
employer in question. This interpretation would exclude
prospective employees who complain that they were not hired
because they had used FMLA-protected leave in the past, as well
as former employees whose previous employer retaliates against
them for using FMLA-protected leave by, for example, giving a
negative reference to a future employer. 
We do not write on a clean slate. The Act delegates
to the Secretary of Labor broad authority to "prescribe such
regulations as are necessary to carry out" the Act. 29 U.S.C.
2654. The regulations on which Duckworth relies were
promulgated pursuant to the requirements of notice-and-comment
rulemaking under the Administrative Procedure Act, 5 U.S.C. 
553. Under those regulations, Duckworth is an "employee" who
can sue for violations of 29 U.S.C. 2615. Pratt & Whitney
does not challenge the procedural validity of the rulemaking
process.
The Secretary of Labor argues that the term
"employees" is ambiguous, not inherently limited to current
employees, and that its regulations extending the Act's
protection to prospective and former employees are entitled to
deference. See Chevron v. Natural Resources Defense Council,
467 U.S. 837, 843-44 (1984); see also 29 C.F.R. 825.220(c). 
The regulations were an exercise of the Secretary's delegated
authority and were adopted with the participation of the
public, and thus deference to the Secretary's interpretation is
properly invoked. 
"Under the formulation now familiar, when we examine
the Secretary's rule interpreting a statute, we ask first
whether 'the intent of Congress is clear' as to 'the precise
question at issue.'" Regions Hosp. v. Shalala, 118 S. Ct. 909,
915 (1998) (quoting Chevron, 467 U.S. at 842). We use
traditional tools of statutory construction to determine if
Congress' intent is clear as to that precise issue. See
id.; Goncalves v. Reno, No. 97-1953, 1998 WL 236799, at *18
(1st Cir. May 15, 1998). If, however, "the statute is silent
or ambiguous with respect to the specific issue, the question
for the court is whether the agency's answer is based on a
permissible construction of the statute." Chevron, 467 U.S. at
843. "If the agency's reading fills a gap or defines a term in
a reasonable way in light of the Legislature's design, we give
that reading controlling weight, even if it is not the answer
'the court would have reached if the question initially had
arisen in a judicial proceeding.'" Regions Hosp., 118 S. Ct.
at 915 (quoting Chevron, 467 U.S. at 843 n.11).
Under the first step of the Chevron analysis, we
examine the statutory language at issue using our traditional
tools of statutory construction. That requires us to determine
whether "the language at issue has a plain and unambiguous
meaning with regard to the particular dispute in the case." 
Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997). "The
plainness or ambiguity of statutory language is determined by
reference to the language itself, the specific context in which
the language is used, and the broader context of the statute as
a whole." Id. We employ that process to determine whether
Congress has spoken, for "[i]f the intent of Congress is clear,
that is the end of the matter; for the court, as well as the
agency, must give effect to the unambiguously expressed intent
of Congress." Chevron, 467 U.S. at 842-43.
The district court determined that the term
"employees" has an inherent "plain meaning." The plain meaning
seen by the district court was that "employees" means "current
employees." Such a definition excludes prospective employees,
and, necessarily, former employees. If, by choosing the word
"employees," Congress had manifested an unambiguous intent to
exclude Duckworth's claim from the Act's coverage, we would
agree with the district court and would be bound to reject the
Secretary's interpretation. No deference is due the
administrative agency's interpretation if it conflicts with
unambiguous language. See Strickland v. Commissioner, Me.
Dep't of Human Servs., 48 F.3d 12, 16 (1st Cir. 1995). Whether
the statute is ambiguous is a question of law for the court to
decide, and it is one which we must review de novo. See id.at 16-17. We think the district court's determination that the
term "employees" is unambiguous, always meaning "current
employees," is in error for several reasons.
First, courts have consistently regarded the term
"employees," as used in other federal employment statutes, as
not inherently limited to current employees. Cases involving
such statutes are instructive, although not determinative. SeeSerapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997) ("We
regard Title VII, ADEA, ERISA, and FLSA as standing in pari
passu and endorse the practice of treating judicial precedents
interpreting one such statute as instructive in decisions
involving another.")
Second, in Robinson, supra, a case raising a very
similar issue under another employment statute, the Supreme
Court made clear that the term "employees," as used in the
anti-retaliation provision of Title VII, 42 U.S.C. 2000e-
3(a), includes former employees. The rationale of Robinsonapplies here. In Robinson, the plaintiff was fired and he
filed a charge with the Equal Employment Opportunity Commission
(EEOC) saying that his firing was motivated by race
discrimination. See 117 S. Ct. at 845. The plaintiff then
applied for a job at another company, and his former employer
gave a negative reference. See id. The plaintiff alleged this
poor reference was in retaliation for his EEOC charge, and
filed suit. The district court dismissed the lawsuit on the
ground that the plaintiff was not an "employee" at the time the
adverse action was taken, and the court of appeals affirmed. 
A unanimous Supreme Court reversed.
The Supreme Court reasoned that the word "employee"
does not have some "intrinsically plain meaning," id. at 847
n.4, that is limited "to those having an existing employment
relationship with the employer in question," even though that
argument may seem plausible "at first blush." Id. at 846. 
Canvassing various federal statutes, Robinson noted that
Congress has not used the term "employee" with precision, but
rather has used the term, at various times, to refer to both
former and prospective employees. Id. at 846-47; see also NLRBv. Town & Country Elec., Inc., 516 U.S. 85 (1995) (upholding
the NLRB's determination that the term "employees" in the
National Labor Relations Act (NLRA) applies to prospective
employees who were paid union organizers); Passer v. American
Chem. Soc'y, 935 F.2d 322, 330-31 (D.C. Cir. 1991) (term
"employees" in Age Discrimination in Employment Act (ADEA)
includes former employees). Thus, absent an express "temporal
qualifier," such as "current," Robinson, 117 S. Ct. at 846,
Congress' use of the word "employees" does not inherently
exclude former and prospective employees.
Third, an example of ambiguity, thus counselling
deference to the agency, comes from the definitional section
enacted by Congress. The FMLA provides that the definition of
"employee" in the FLSA, 29 U.S.C. 203(e), is also applicable
to the FMLA. See 29 U.S.C. 2611(3). That definition, "any
individual employed by an employer," 29 U.S.C. 203(e), (which
is subject to certain exceptions not relevant here) does not
make the term any less ambiguous. In Robinson, the Supreme
Court found that the identical definition contained in Title
VII did not add anything to "employee" which made it less
ambiguous. See 117 S. Ct. at 847; see also Nationwide Mut.
Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) ("ERISA's nominal
definition of 'employee' as 'any individual employed by an
employer' is completely circular and explains nothing."
(Citation omitted.)).
Pratt & Whitney argues that, although the term
"employed" could mean both "is employed" or "was employed," seeRobinson, 117 S. Ct. at 847 (noting this ambiguity), it cannot
mean "will be employed," and so the use of the FLSA definition
at least excludes prospective employees. However, the FMLA's
use of the FLSA definition of "employee" was plainly meant to
incorporate the FLSA's list of exceptions, see 29 U.S.C. 
203(e), not to exclude prospective employees from the FMLA's
coverage. Indeed, the FLSA definition of "employee" has been
held by one circuit court to apply to prospective employees,
see Dunlop v. Carriage Carpet Co., 548 F.2d 139 (6th Cir.
1977), and has been described by the Supreme Court as
"exceedingly broad," Tony & Susan Alamo Found. v. Secretary of
Labor, 471 U.S. 290, 295 (1985); see also United States v.
Rosenwasser, 323 U.S. 360, 362 (1945) ("A broader or more
comprehensive coverage of employees within the stated
categories [in the FLSA] would be difficult to frame.") 
"Congress' repetition of a well-established term carries the
implication that Congress intended the term to be construed in
accordance with pre-existing regulatory [and judicial]
interpretations." Bragdon v. Abbott, No. 97-156, 1998 WL
332958, at *5 (U.S. June 25, 1998); see also Goncalves, 1998 WL
236799, at *25 (noting that Congress is presumptively aware of
existing judicial or administrative interpretations). 
Moreover, the legislative history reveals that Congress, at the
time it enacted the FMLA, was aware of the breadth of the FLSA
definition and purposely chose to adopt that definition. SeeS. Rep. No. 103-3, at 22 (1993), reprinted in 1993 U.S.C.C.A.N.
3, 25 (noting that "[t]his definition is broadly inclusive");
Bragdon, 1998 WL 332958, at *13 (noting that the legislative
history revealed Congress' awareness of the breadth of the
definition of "handicap" in the Rehabilitation Act when it
chose to include that definition in drafting the ADA).
Fourth, our reading of other statutory provisions
does not eliminate the ambiguity. In providing various
readings of statutory terms below, we are most emphatically not
ruling on whether the particular readings are correct, only
that the variety of possible readings demonstrates ambiguity. 
And that ambiguity sets the stage for deference to reasonable
administrative interpretation. In this context, we address one
of Pratt & Whitney's strongest arguments, that Congress has, in
some statutes, distinguished "job applicants" from "employees,"
expressly providing that the statute's protection extends to
both. See, e.g., 42 U.S.C. 12112(b)(1) (providing that, in
the ADA, "the term 'discriminate' includes limiting,
segregating or classifying a job applicant or employee" in a
way that adversely affects a disabled individual's
opportunities). Congress could have done so here, under the
FMLA, but did not. That Congress could have singled out "job
applicants" for express coverage does not mean it clearly
intended to exclude job applicants from the FMLA. Indeed, much
prior judicial interpretation of analogous statutes could lead
Congress to conclude that such a level of precision is not
required, or at least that it could, by choosing to use an
open-ended term like "employee," entrust that policy choice to
the agency. For example, the NLRA does not explicitly include
"job applicants" within its definition of "employees," see 29
U.S.C. 152(3), but the Supreme Court has long held that term
to include prospective employees, see Phelps Dodge Corp. v.
NLRB, 313 U.S. 177, 185-86 (1941), and has recently upheld a
Board determination that the term applies to prospective
employees who were paid union organizers, see Town & Country,
516 U.S. at 87. In the FMLA, Congress did not provide separate
protection for "job applicants" and for "employees." The
Supreme Court has repeatedly observed that the word "employee"
"is not treated by Congress as a word of art having a definite
meaning" that would, for example, exclude prospective or former
employees. NLRB v. Hearst Publications, Inc., 322 U.S. 111,
124 (1944) (internal quotation marks and citation omitted).
Pratt & Whitney next argues that, given the "specific
context in which [the term 'employees'] is used," Robinson, 117
S. Ct. at 846, the term can only mean current employees. This,
Pratt & Whitney argues, is the express "temporal qualifier"
that makes the term "employees" in 29 U.S.C. 2617
unambiguous, and thus makes the outcome of Robinson not
controlling. Paragraph (1) of the section at issue makes
"[a]ny employer who violates section 2615 of this title . . .
liable to any eligible employee affected for damages . . . and
for such equitable relief as may be appropriate, including
employment, reinstatement, and promotion." 29 U.S.C. 
2617(a)(1) (emphasis supplied). Paragraph (2) then provides
that "[a]n action to recover the damages or equitable relief
prescribed in paragraph (1) may be maintained against any
employer . . . by any one or more employees . . . ." Id. 
2617(a)(2). An "eligible" employee is one who has worked for
at least twelve months and for at least 1,250 hours of service. 
See id. 2611(2). Pratt & Whitney argues "employees" cannot
mean prospective employees because such employees are not yet
eligible, and it cannot mean former employees because such
employees are no longer eligible.
Pratt & Whitney's argument necessarily assumes that
the employee must be "eligible" at the time of the adverse
action, rather than at the time the employee wishes to take
leave. This reading is far from mandated by the statute's
language, and strikes us as unlikely. The statute makes any
employer "liable to any eligible employee affected" by a
violation of the Act. This language, read naturally, means
that an employee must be "eligible" at some time and that he or
she must have been "affected" by the employer's action. The
statute does not make clear whether an employee is "affected"
by an adverse action at the time the action was taken or at the
time he or she wanted to take leave, or indeed whether there is
any required temporal connection between "eligible" and
"affected." In Duckworth's case, although Pratt & Whitney
(arguably) took its adverse action after Duckworth left
employment, its action was, Duckworth argues, one designed to
punish him for his past protected leave-taking (as a former
eligible employee) or to prevent him from future protected
leave-taking (as a prospective eligible employee). Under this
interpretation, Pratt & Whitney's actions "affected" Duckworth
and Duckworth was eligible when he took his leave.
Other language in the subsection, providing for
equitable remedies, suggests a different reading: that the
requirement of eligibility applies when the employee wishes to
take leave, not when the employer takes an adverse action. The
remedies include "employment, reinstatement, and promotion." 
These remedies are inconsistent with a definition of "employee"
which applies only to current employees. Instead, each of the
three remedies most naturally refers to employees who are in
different temporal circumstances -- one "promot[es]" a current
employee, one "reinstate[s]" a former employee, and one
"employ[s]" a prospective employee. Cf. Robinson, 117 S. Ct.
at 847 (making a similar observation). Pratt & Whitney argues
that reinstatement could be limited to those former employees
who suffered the adverse action at a time they were still
employed, and that the remedy of "employment" could also be
limited to such former employees. But that interpretation is
certainly not the only plausible reading, and suffers from its
own problems. It renders the remedy of "employment" in 29
U.S.C. 2617(a)(1) essentially the same as the statutory
remedy of "reinstatement" in that subsection, making the terms
redundant. It is a "'cardinal principle of statutory
construction that it is our duty to give effect, if possible,
to every clause and word of a statute.'" Goncalves, 1998 WL
236799, at *20 (quoting Bennett v. Spear, 117 S. Ct. 1154, 1166
(1997)).
We regard the statute as, at best, ambiguous
concerning the temporal scope of the term "employees." The
statute does not plainly limit the term to current employees. 
We also find nothing in the legislative history evincing a
"clearly expressed legislative intention contrary to the
statutory language" that would resolve the ambiguity in Pratt
& Whitney's favor. United States v. Rivera, 131 F.3d 222, 226
(1st Cir. 1997) (en banc) (internal quotation marks and
alterations omitted). Finally, nothing in the "broader context
of the statute as a whole," Robinson, 117 S. Ct. at 846,
provides support for Pratt & Whitney's position that there is
an unambiguously expressed intent of Congress to read the
statute as it poses. 
Consequently, the second stage of the Chevronanalysis comes into play: whether the Secretary's reading of
the statute is a reasonable one. See Massachusetts v. FDIC,
102 F.3d 615, 622 (1st Cir. 1996). The statute, read as a
whole and in light of its purposes, leads to the conclusion
that the Secretary's broad definition of "employees" is
reasonable.
First, the provision at issue, the enforcement
section, makes any employer "who violates section 2615 of this
title" liable to the affected employee in a civil action. 29
U.S.C. 2617(a)(1). Section 2615 provides that it is unlawful
"to interfere with, restrain, or deny the exercise of or the
attempt to exercise, any right" provided by the FMLA, as well
as to deny leave. Id. 2615(a)(1). That section also makes
it "unlawful for any employer to discharge or in any other
manner discriminate against any individual for opposing any
practice made unlawful" by the FMLA. Id. 2615(a)(2). 
Finally, that section provides specific protection to "any
individual" who gives any information in a proceeding "under or
related to" the FMLA. Id. at 2615(b). None of these
provisions are limited to current, eligible employees; instead,
they use terms like "any individual." Of course, the statute's
private right of action is limited to "employees," but that
term is not inherently limited to current employees, and the
scope of the "prohibited acts" section strongly suggests that
it should not be so limited. 
Indeed, the fact that 2615 uses the term "any
individual" is strong evidence that Congress drew a distinction
when drafting the FMLA between the substantive right of leave
and the right under the anti-retaliation provision to be free
from employer interference with FMLA-protected leave rights.
Such interference, Congress implicitly recognized, could be
directed at individuals (such as prospective and former
employees, or witnesses in FMLA proceedings) who might not be
presently eligible for FMLA leave. Although only "eligible
employees" have substantive rights, it is unlawful for an
employer to interfere with the rights of "any individual" that
are protected under the Act.
Other sections of the FMLA are likewise consistent
with the Secretary's interpretation. For example, covered
employers are required under the FMLA to post a notice setting
forth the FMLA's statutorily mandated leave policy "in
conspicuous places on the premises of the employer where
notices to employees and applicants for employment are
customarily posted." Id. 2619. It would be strange, as the
Secretary notes, to require job applicants to be informed of
rights if the employer is free to punish prospective and new
employees for asserting such rights.
Similarly, the prelude "findings and purposes,"
contained in the FMLA at 2601, say that "employment standards
that apply to one gender only have serious potential for
encouraging employers to discriminate against employees and
applicants for employment who are of that gender." This was
Congress' rationale for mandating gender-neutral leave for
family and medical purposes rather than mandating maternity
leave for women who had recently given birth. It would be
inconsistent with Congress' concern about possible
discrimination against prospective employees who intend to take
leave to limit the Act's private remedies to current
employees. 
The Secretary of Labor notes a number of effects of
the position taken by Pratt & Whitney which would undermine the
stated purposes of the statute. Under Pratt & Whitney's
interpretation, an expectant mother who had worked for her
employer for eleven months could be fired from her job if she
notified her employer of her need for leave several months
later, at a time when she would be an "eligible" employee under
the FMLA. Under Pratt & Whitney's interpretation, the employer
would be permitted to fire her even though it could not deny
the employee leave once she had been employed for twelve
months. Such a result, in the Secretary's view, would conflict
with the Act's basic purpose of enhancing job security by
protecting the right of eligible employees to take leave. 
Pratt & Whitney's reading would also foster a perverse
incentive to fire new employees or to refuse to hire
prospective employees who were seen as posing a risk of
exercising their rights under the FMLA, such as women of child-
bearing age, frustrating the Act's basic purpose of
"minimiz[ing] the potential for employment discrimination on
the basis of sex by ensuring generally that leave is available
. . . on a gender-neutral basis." Id. 2601(b)(4). 
Pratt & Whitney's interpretation would also provide
less protection for new employees or applicants who notify
their employers of a need for future leave than those who
conceal a need for leave, thus frustrating the implementation
of the Act "in a manner which accommodates the legitimate
interests of employers." 29 U.S.C. 2601(b)(3). It would
also conflict with another section of the Act requiring an
employee to give thirty days' notice for parental leave, if
practicable. See id. 2612(e). All of these considerations
reinforce the reasonableness of the Secretary's interpretation.
In light of Congress' purposes in enacting the FMLA,
the agency's construction is a permissible one, i.e., one which
"fills a gap or defines a term in a reasonable way . . . ." 
Regions Hosp., 118 S. Ct. at 915. Congress enacted the FMLA
"'to help working men and women balance the conflicting demands
of work and personal life.'" Hodgens v. General Dynamics
Corp., No. 97-1704, 1998 WL 248013, at *4 (1st Cir. May 21,
1998) (quoting Price v. City of Fort Wayne, 117 F.3d 1022, 1024
(7th Cir. 1997)). The FMLA was Congress' response to what it
considered significant social problems affecting families,
including "'inadequate job security for employees who have
serious health conditions that prevent them from working for
temporary periods.'" Id. (quoting 29 U.S.C. 2601(a)(4)). 
The Act does so by establishing a minimum leave standard which
requires all covered employers to permit eligible employees to
take up to twelve weeks of unpaid leave for certain family or
medical purposes. See id. at *5; see also S. Rep. No. 103-3,
at 4 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 6-7 ("The [Act]
is based on the same principle as the child labor laws, the
minimum wage, Social Security, the safety and health laws, the
pension and welfare benefit laws, and other labor laws that
establish minimum standards for employment.").
As both Duckworth and the Secretary of Labor
persuasively argue, the achievement of these objectives would
be frustrated by adopting Pratt & Whitney's interpretation. 
That interpretation would permit an employer to evade the Act
by blacklisting employees who have used leave in the past or by
refusing to hire prospective employees if the employer suspects
they might take advantage of the Act. See Robinson, 117 S. Ct.
at 848-49 (deferring to EEOC's concern over potential
retaliation in defining "employee" to include former
employees); Town & Country, 516 U.S. at 90 (1995) (noting that
"the Board needs very little legal leeway here to convince us
of the correctness of its decision" extending the term
"employee" in the NLRA to include prospective employees who
were also union organizers).
Pratt & Whitney's concerns, echoed by amici business
groups, nonetheless are not without force. They are concerned
that the FMLA not be interpreted as establishing a special
protected class of "FMLA leave-takers" in which any adverse
action is presumed to be the result of ulterior motives. This
opinion does not lead to that result. Duckworth's complaint
states that it was his use of FMLA-protected leave which caused
Pratt & Whitney to reject his application for employment. To
prevail, Duckworth will have to convince the trier of fact that
Pratt & Whitney would have hired him if he had not taken FMLA-
protected leave, i.e., that the reason it refused to hire him
was because of his use of FMLA-protected leave in the past. 
The Secretary of Labor's interpretation of the FMLA
is certainly within the permissible range of policy options
which Congress delegated to the agency. If the regulations, in
practice, prove unduly burdensome to employers, employers may
seek to have the Department of Labor revise the regulations or
seek relief from Congress, which expressly delegated to the
agency such policy choices.
Because Duckworth's complaint states a claim upon
which relief may be granted, we reverse the district court's
judgment and remand the case for further proceedings consistent
with this opinion. Costs are awarded to Duckworth.