Weeden v. Sears, Roebuck & Co.     CV-98-435-JD  08/19/99
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Ronald W. Weeden

        v.                           Civil No. 98-435-JD

Sears Roebuck & Company


                        O R D E R


    The plaintiff, Ronald W. Weeden, brought an action against

his former employer, Sears Roebuck & Company, alleging that Sears

refused to give him leave and terminated his employment in

violation of the Family and Medical Leave Act ("FMLA").[1]  Sears

moves for summary judgment, asserting that Weeden did not provide

timely notice of his illness or requested leave as required by

the FMLA.  Weeden objects, contending that Sears had sufficient

notice before his employment was terminated.


                    Standard of Review

    Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

_____

    [1]The state law claims have since been dismissed.

56(c). The record evidence is taken in the light most favorable to the nonmoving party. <u>Perkins v. Brigham & Women's Hosp.</u>, 78 F.3d 747, 748 (1st Cir. 1996). In response to a properly supported motion for summary, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of the claim. <u>See</u> <u>Tardie v. Rehabilitation Hosp.</u>, 168 F.3d 538, 541 (1st Cir. 1999). "An issue is 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor, while a fact is 'material' if it has the potential to affect the outcome of the suit under the applicable law." <u>Bourque v. F.D.I.C.</u>, 42 F.3d 704, 707-08 (1st Cir. 1994) (quotations omitted). Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## Background

Ronald Weeden began working for Sears in 1990, and was the automotive manager at the Sears store in South Portland, Maine, from April of 1996 until May of 1997. The automotive stores are now called Sears Tire Group ("STG") units. During the spring of 1997, Weeden began to experience severe anxiety that caused him

2

to have episodes of uncontrollable shaking, difficulty concentrating, insomnia, and loss of appetite. He lost thirty pounds due to his anxiety and loss of appetite.

In the spring of 1997, Weeden asked his district manager, Michael Ryan, if he could take vacation time because he was sick and could not work, but his requests were denied. The 1997 STG guidelines required that vacations and personal holidays be scheduled and approved by the district manager in advance. Vacations were to be scheduled thirty days in advance, and personal holidays were to be requested before the week's schedule was completed. According to the 1997 guidelines, as a unit manager, Weeden was to call his district manager, Michael Ryan, and his unit to report his illness or absence days. The STG manual provided that absence from work for two consecutive days without notifying the unit could result in immediate termination.

On May 7, 1997, Weeden attended a training meeting with another STG store manager and Ryan. During the meeting, Weeden was nervous and anxious, had difficulty concentrating and typing, and could not distinguish numbers on the pages he was reading. Ryan noticed that Weeden was shaking and that he was unable to do the training work including basic math calculations. When Ryan asked what was wrong, Weeden said that he was not feeling well, that he was anxious and could not concentrate, and asked for

3

help.  Ryan suggested that Weeden see a doctor.  Weeden asked Ryan for time off to attend a fishing derby the week of May 18. Ryan turned down the vacation request because Weeden had not given thirty days notice, but said he could take personal days. Weeden told Ryan again he needed time off because he was sick and unable to work.

Weeden continued to work after the May 7 training meeting. On Monday, May 12, or Tuesday, May 13, Weeden contacted the Human Resources Department at Sears and asked to talk with a therapist or doctor immediately because he felt he was having a breakdown. Human Resources referred him to a social worker, Roberta Hirshon, in the Employee Assistance Program.  Weeden left work early on May 13 for his appointment with Ms. Hirshon.  Ms. Hirshon referred him to his medical doctor.

The morning of Wednesday, May 14, Weeden called work and told the assistant manager of the unit, Aaron Hackett, that he would not be in because he felt sick and was seeing a doctor. Weeden said that he would call back later.  Weeden saw his doctor, Dr. Packard, on May 14 without an appointment.  Dr. Packard gave him tranquilizers and scheduled an appointment for him on Monday, May 19.  Dr. Packard also told Weeden not to return to work until further notice, to take the tranquilizers, and to try to relax.

Weeden was expected to work the week of May 12 through May 16. Ryan had also scheduled a meeting with Weeden for Sunday, May 18, to discuss the results of a peer review survey in Weeden's unit. Ryan had explained the importance of the Sunday meeting to Weeden. Weeden called Hackett's STG pager on Thursday, May 15, and left a message that he was having medical problems and was going to be out of work for a while. Weeden did not call Ryan to report his illness or absences.

Ryan was notified of Weeden's absences from work. Hackett and Ryan say that they tried to contact Weeden, leaving messages on Weeden's home answering machine and his STG pager.[2] On Sunday, May 18, Ryan traveled from New York to Maine for the meeting. Weeden did not attend or call to explain his absence.

Weeden attended a fishing derby with a friend on Friday, Saturday, and Sunday, May 16 through 18. During that time, Weeden was taking the medications prescribed by Dr. Packard for his anxiety. He says that his friend drove and that he does not remember much about the weekend because of the effects of his medications and his anxiety. He says he felt "sort of like a zombie."

Dr. Packard examined Weeden on Monday, May 19, and wrote a

_____

[2]Weeden does not seem to dispute that they left messages for him.

5

note to explain Weeden's absence to Sears, saying that Weeden "has been under my care since 14 May 97 for acute situational anxiety-depressive reaction. Not to work until further notice." Plaintiff's Memorandum at 5 (quotation omitted). Either later on Monday, May 19, or on Tuesday, May 20, Weeden called Dick Grimes, the manager of the South Portland Sears store and told him that he had been diagnosed with acute situational anxiety-depressive reaction and would not be back to work until further notice. On May 21, Weeden telecopied Dr. Packard's note to Grimes at Sears. Hackett saw the note and notified Ryan.

In the meantime, Ryan had begun the process of terminating Weeden's employment by contacting his STG regional manager on Sunday, May 18 to report Weeden's absences. Ryan requested permission to terminate Weeden for violating the company's "no show, no call" policy. He was directed to contact the Regional Human Resources Manager, Joann Law, and the National Human Resources Manager, Joann Busch, in Chicago. Ryan asked Human Resources if Weeden had contacted the Employee Assistance Program or checked into a rehabilitation program because there were rumors that Weeden had an alcohol problem. Ryan told the human resource managers all the details he had observed about Weeden at the May 7 meeting including his nervousness and weight loss. Later on May 19, Ryan was informed that Weeden would be

6

terminated.  On May 22, Ryan received a message from Grimes that he had received the note from Dr. Packard on May 21.  Ryan notified Joann Busch by E-mail of Dr. Packard's note.

Weeden received notice by a letter postmarked May 22, 1997, that his employment was terminated.  Sears has indicated that Weeden was terminated for violation of the "no show no call" policy.

## Discussion

Weeden contends that Sears violated the FMLA by refusing to give him leave when he asked for time off and by terminating his employment while he was absent.  Sears argues that Weeden was not entitled to FMLA leave and was properly terminated when he missed work without providing notice as required in the employment policy.  In response, Weeden argues that Sears had sufficient notice of his serious health condition based on the events and circumstances before and during his absence.

The FMLA provides leave time to covered employees for serious health conditions and protects their right to employment when they return at the end of the leave period.  See 29 U.S.C.A. §§ 2612(a) and 2614(a).  A "serious health condition" within the meaning of the FMLA is a mental or physical condition that "involves in patient care" or "continuing treatment by a health

7

care provider." 29 U.S.C.A. § 2611(11). Continuing treatment is further defined to include a period of incapacity, meaning an inability to work for more than three consecutive calendar days, along with treatment by a health care provider. See 29 C.F.R. § 825.114(a)(2)(i). An employee who anticipates needing leave for planned treatment must provide at least thirty days advance notice. See 29 C.F.R. § 825.302(a). If leave is required unexpectedly, the employee is to give notice as soon as practicable. See 29 C.F.R. § 825.303(a).

Weeden has not shown that he had a serious health condition qualifying for FMLA leave when he asked Ryan for vacation time. Although he said he was sick and could not work, and he demonstrated symptoms of anxiety, he has not shown that he was intending to enter inpatient care or that he was or knew he would be under the care of a health provider. Weeden had not then consulted a doctor about his condition, and Ryan suggested that he see a doctor. Weeden asked for vacation or personal time in part to attend a fishing derby. He continued to work for a week after his request was denied on May 7.

To be entitled to FMLA leave, the employee must not only ask for leave but also state a qualifying reason for the leave. See Stoops v. One Call Communications, Inc., 141 F.3d 309, 312-13 (7th Cir. 1998). The facts in the present record do not show

8

that Weeden gave an FMLA qualifying reason for leave.  See, e.g., Price v. City of Fort Wayne, 117 F.3d 1022, 1025 (7th Cir. 1997) (discussing requirements for a serious health condition). Therefore, Ryan's denials of Weeden's request for vacation time were not violations of the FMLA provisions for planned leave.

Instead, the circumstances of this case involve an unplanned leave beginning on May 14.  To be entitled to FMLA leave, Weeden had to notify his employer that he would be absent due to a serious health condition as soon as was practicable.  See 29 C.F.R. § 825.303(a).  Notice should be given "within one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." Id.  "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."  Id.

A request for unforeseen leave must inform the employer of the employee's need to take time off because of a serious health condition.  See Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 977 (5th Cir. 1998).  The employee must give his employer sufficient information to put the employer on notice that he needs FMLA leave.  See Gay v. Gilman Paper Co., 125 F.3d 1432, 1435-36 (11th Cir. 1997).  "What is practicable, both in terms of the timing of the notice and its content, will depend on the

9

facts and circumstances of each individual case." <u>Manuel v.</u>
<u>Westlake Polymers Corp.</u>, 66 F.3d 758, 764 (5th Cir. 1995). Once
an employee gives notice of a need for leave that may be FMLA-
qualified, it is the employer's duty to inquire further to
determine whether the FMLA applies. <u>See</u> <u>Price</u>, 117 F.3d at 1026.

Weeden first notified Sears on May 19 or 20 of his need for
leave due to his health condition when he called Dick Grimes, the
manager of the Sears store, to report that he had been diagnosed
with acute situational anxiety-depressive reaction and would not
be back to work until further notice. Notice to Grimes was
followed on May 21 by the faxed copy of Dr. Packard's note,
explaining that Weeden had been under his care since May 14 for
acute situational anxiety-depressive reaction and would not
return to work until further notice. Notice of Dr. Packard's
diagnosis and treatment was sufficient to trigger Sears's
obligation under the FMLA to inquire as to whether FMLA-qualified
leave was needed.[3]

Sears contends, however, that notice was untimely because by
the time Weeden called Grimes and then faxed Dr. Packard's note,
Weeden had been absent for four work days and had missed the

---

[3]Although Sears notes the required notice procedures in the
STG policy and guidelines, it is not clear on the record
presented for summary judgment that Weeden's communications to
Dick Grimes and Aaron Hackett were insufficient for purposes of
the FMLA.

10

Sunday meeting, without permission.  Sears says that it had already terminated Weeden's employment, or at least begun the process of terminating his employment, for violating the "no call, no show" policy.  Once employment has been terminated, the terminated employee is no longer eligible to request leave.  See, e.g., Brohm v. JH Properties, Inc., 947 F. Supp. 299, 302 (W.D. Ky. 1996), aff'd 149 F.3d 517, 523 (6th Cir. 1998).  The STG national personnel relations manager, Joann Busch, notified Ryan on May 19 that Weeden would be terminated, and Weeden received his termination notice postmarked May 22.  Given those circumstances, it is disputable on the present record whether Weeden had been terminated when he called Dick Grimes on May 19 or 20 and when he faxed Dr. Packard's note on May 21.[4]

Sears also argues that because the termination process was in motion before Weeden called Grimes or sent Dr. Packard's note, those notices were too late.  The cases Sears cites are inapposite to the circumstances here.  In Beno v. United Telephone Co., 969 F. Supp. 723 (M.D. Fla. 1997), the employer had decided to fire the plaintiff because of expense account

_____

[4]Based on the present record, it is not clear that Weeden violated the "no show, no call" policy since he called to report his absences on May 14 and May 15.  On May 15, he said he would be out for a few days, which would ostensibly cover his absence until Monday or Tuesday, when he called Dick Grimes.

11

irregularities when she asked for FMLA leave. The employer granted the requested leave but notified the plaintiff while she was on leave that her employment was terminated. Id. at 725. The plaintiff brought an FMLA claim alleging that she had been fired in retaliation for taking leave. Id. The fact that her termination was in progress before she asked for leave did not affect her qualification for leave, but instead was evidence that she was not terminated in retaliation for the leave. Id. at 726.

Similarly, the plaintiff in Tuberville v. Personal Finance Corp., 3 Wage & Hour Cas.2d (BNA) 882 (N.D. Miss. 1996) asked for planned FMLA leave while her employer was considering closing her office location. As the date of the requested leave approached, the employer decided that the office would have to be closed, meaning the plaintiff and other employees would be terminated. The plaintiff argued that she was terminated because of her requested leave, but the court held that because the office closing was already contemplated, evidence did not support her FMLA claim. Id.

Weeden does not claim that he was fired because he requested planned FMLA leave as in Beno and Tuberville. Instead, he argues that Sears fired him for unplanned absences that were protected by the FMLA and were adequately explained by his calls and Dr. Packard's note. Whether notice to Grimes on May 19 or 20 was

12

given as soon was practicable under the circumstances or whether Weeden's calls to Hackett, taken in light of the other information known about Weeden's health, constituted sufficient notice of his serious health condition given as soon as was practicable cannot be resolved on the present record. See Price, 117 F.3d at 1026; Manuel, 66 F.3d at 762. As material factual issues remain pertaining to the circumstances of Weeden's absences and notice to Sears, Sears is not entitled to summary judgment based on the present record.


### Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 11) is denied. The court urges the parties to consider mediation within the near future in an attempt to reach a nontrial disposition of this case.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
District Judge

August 19, 1999

cc:  Kimberly Kirkland, Esq.
     Eric G. Falkenham, Esq.

13