**Iwona M. MUSZAK, Plaintiff,**

v.

**SEARS, ROEBUCK & CO., Defendant.**

**No. 97–CV–6258L.**

United States District Court,
W.D. New York.

Aug. 19, 1999.

---

Nira T. Kermisch, Rochester, NY, for Iwona M. Muszak, plaintiff.

Thomas S. Gill, Saperston & Day, P.C., Buffalo, NY, for Sears, Roebuck and Co., defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

In this employment discrimination case, plaintiff Iwona Muszak ("Muszak") claims that defendant Sears, Roebuck & Co. ("Sears") failed to promote her because of her Polish national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (4th Cause of Action) and the New York Human Rights Law ("HRL") (1st Cause of Action), failed to provide a reasonable accommodation for her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") (5th Cause of Action) and the HRL (2nd Cause of Action), and terminated her in retaliation for requesting an accommodation in violation of Title VII (6th Cause of Action) and the HRL (3rd Cause of Action). Presently before me is Sears' motion for summary judgment. For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

In this employment discrimination action, plaintiff either alleges or does not dispute the following [1]:

Sears hired plaintiff on March 21, 1994 to work as a beauty consultant in the cosmetics department of its store in Greece, New York. (Sears' Local Rule 56 Statement ¶ 1; Amended Complaint ¶ 10). In September 1995, plaintiff hurt her back while working. (Amended Complaint ¶ 13). In February 1996, plaintiff aggravated her back injury in an automobile accident. (Amended Complaint ¶ 15).

Plaintiff also alleges that in early 1996, she applied and interviewed for the position of cosmetic department manager of Sears' Marketplace Mall location in Henrietta, New York. (Amended Complaint ¶ 28). Jack Farrell, the manager of Sears' Marketplace Mall store, interviewed plaintiff on or about March 15, 1996. (Sears' Local Rule 56 Statement ¶ ¶ 3–4). Plaintiff's former manager, Sarah DiSalvo, was offered the position. (Plaintiff's Dep., pp. 63, 57, 45).

During the summer of 1996, plaintiff was on a three month disability leave, and she returned to work in September 1996. (Amended Complaint ¶ ¶ 16–17). In November 1996, she requested that the cash register in her department be moved into a position that was level with her waist and would permit her to face customers as she used the register. (Sears' Local Rule 56 Statement ¶ 6; Amended Complaint ¶ 18). Plaintiff claimed that such a position would alleviate strain on her back by reducing the amount of stretching and turning that was otherwise required to use the register in its current high position behind her sales counter. (Sears' Local Rule 56 Statement ¶ 6; Amended Complaint ¶ 19). Plaintiff provided Sears personnel with a request, dated December 5, 1996, from her physician, James P. Reidy, M.D., that the register be lowered. (Amended Complaint ¶ 21; Sears' Local Rule 56 Statement ¶ 8). Robert Scalia, the operations manager for Sears' store in Greece, New York, advised plaintiff to use the register in the "Circle of Beauty" (which apparently was in close proximity to the cosmetics department where plaintiff worked). (Sears' Local Rule 56 Statement ¶ 7). Plaintiff thereupon submitted a second note, this time from her chiropractor, David Jividen, which indicated that "work stations" should be "waist-high" and "work station equipment should face the customers to prevent continual twisting and turning of the spine." (Exhibit D to affidavit of T. Gill; Sears' Local Rule 56 Statement ¶ 9). Plaintiff overheard, however, that Sears had decided not to move the register plaintiff customarily used. (Amended Complaint ¶ 23). Plaintiff further claims to have submitted a third note about register location and placement on January 4 or 5,

1. Sears, on the other hand, takes issue with a variety of these allegations.

1997. (Plaintiff's Local Rule 56 Statement ¶ 3).

On January 5, 1997, plaintiff was working in a stock room when she was paged to her sales counter by a co-employee, Kathleen Isgro. (Sears' Local Rule 56 Statement ¶¶ 12–13). Plaintiff told Isgro not to page her again. (Sears' Local Rule 56 Statement ¶ 14). Isgro subsequently claimed that plaintiff yelled at Isgro and hit her on the arm. (Sears' Local Rule 56 Statement ¶ 13; Statement of K. Isgro, attached as Exhibit A to affidavit of K. Isgro). Shortly thereafter, on January 11, 1997, Plaintiff's superior, Carol Kalmbacher, informed plaintiff that she had been terminated for having assaulted Isgro. (Amended Complaint ¶ 27; Sears' Local Rule 56 Statement ¶ 2).

Muszak claims to have filed an administrative charge with the EEOC on or about April 14, 1997, and that a Right to Sue letter was issued on or about December 10, 1997. This action was filed on June 5, 1997, apparently before any right to sue letter had been issued, and an amended complaint was filed on February 6, 1998.

## DISCUSSION

Sears now moves, under FED.R.CIV.P. 56, for summary judgment. Sears asserts that Muszak's complaint should be dismissed in its entirety because there is no evidence whatsoever of national origin discrimination as prohibited by Title VII or the HRL, and that Muszak cannot show even a *prima facie* case of disability discrimination under the ADA. In particular, Sears argues (1) plaintiff failed to show that her national origin was a motivating factor in the decision not to promote her; (2) there is no evidence that plaintiff's alleged disability or request for an accommodation played any role in her termination; and (3) Sears did not fail to provide plaintiff with a reasonable accommodation.

On a motion for summary judgment, "a court's responsibility is to assess whether there are any factual issues to be tried."

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991), *citing, Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Coach Leatherware Co. v. Ann-Taylor, Inc.*, 933 F.2d at 167. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, it "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348, *quoting* FED.R.CIV.P. 56(e) (alteration in original). For a plaintiff in a discrimination case to survive a motion for summary judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon*, 759 F.2d 989 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id.*, *cited in, Duprey v. Prudential Ins. Co.*, 910 F.Supp. 879 (N.D.N.Y.1996).

## A. The Failure–to–Promote Claims

■ In order to establish a *prima facie* case of discrimination[2] in a failure to promote claim, a plaintiff must show that: (1) she belongs to a protected class; (2) she applied for and was qualified for a job promotion for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) the promotion was given to someone not a member of her class. *See Sweeney v. Research Foundation of S.U.N.Y.*, 711 F.2d 1179, 1185 (2d Cir.1983); *Quiros v. Ciba–Geigy Corp.*, 7 F.Supp.2d 380, 382 (S.D.N.Y. 1998). It has also been held that a plaintiff must establish that her national origin was a motivating factor in the employer's decision not to promote her. *Torres v. BFI Waste Systems*, 1998 WL 401673, * 2 (W.D.N.Y.1998).

■ The parties do not dispute plaintiff's Polish national origin, and, in effect, concede that plaintiff has satisfied the first prong of the above test. However, a plaintiff who cannot demonstrate that she possessed the requisite qualifications for a position cannot charge that the position was awarded to someone else on a discriminatory basis. *See McMillan v. Examination Management Svces., Inc.*, 94–CV–2229, 1996 WL 551725, *10 (S.D.N.Y. Sept.27, 1996); *see also Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir.1993) (holding, *inter alia*, that plaintiffs, who failed to produce evidence that they met qualifications set forth in employer's job description, could not maintain a claim that they had been passed over for promotion in violation of Title VII), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994); *accord Canino v. EEOC*, 707 F.2d 468, 471 (11th Cir.1983) (holding that plaintiff had failed to establish a *prima facie* case of retaliatory failure to promote where plaintiff did not meet qualifications of position sought).

■ The sole basis for plaintiff's claim is that the Jack Farrell, the former manager of Sears' Marketplace Mall store, allegedly told plaintiff that she did not get a job because Carol Kalmbacher had told Farrell that plaintiff's "English is not good enough."[3]

Sears contends that communication skills are necessary to a managerial position like this one because of the employee's need to communicate with higher level managers and instruct other employees. It does not seem unreasonable to require good communication skills for candidates seeking a managerial position. Indeed, according to plaintiff's own testimony, she was told that filling out papers, reading notes and facsimile transmissions and being able to interpret them, communicating at meetings, and writing were requirements of the position for which she applied. (Plaintiff's Dep., p. 64). If communication skills were a part of the job and if her language skills were not sufficient[4], a decision by the employer denying the promotion for that reason does not constitute national origin discrimination. *See Arzate v. City of Topeka*, 884 F.Supp. 1494, 1501 (D.Kan.1995) ("language difficulties that interfere with performance of duties may be legitimately considered in employment decisions").

Moreover, plaintiff herself concedes that the person who was her supervisor at least as of November 1996, Sarah DiSalvo, was the person hired for this position rather than plaintiff. (Plaintiff's Dep., pp. 63, 45, 57). It was not unreasonable that Sears

2. In this area, the elements and burdens of proof are the same for discrimination claims brought pursuant to Title VII and the HRL. *See Smith v. Cadbury Beverages, Inc.*, 942 F.Supp. 150, 154 (W.D.N.Y.1996).

3. While Carol Kalmbacher, on the other hand, denies making such a statement to Farrell, I do not rely on that denial in deciding Sears' motion.

4. Plaintiff's difficulties with the English language are readily apparent from the excerpts of her deposition that have been submitted to the Court, but, again, I do not rely on that in deciding the instant motion.

chose to fill the position with a person that the company valued enough to have made a manager.

Lastly, plaintiff has the burden of establishing both that she was qualified for the job and that Sears' stated reason for not offering her the job was pretextual. Plaintiff has failed to meet either of these burdens. Other than her testimony regarding her belief as to what the position entailed, she has not demonstrated that she possessed the qualifications for the position. As a result, her unsubstantiated federal and state failure-to-promote claims cannot survive Sears' summary judgment motion.

## B. The Disability Claims

### 1. The Americans with Disabilities Act

The ADA prohibits discrimination in the hiring, advancement, or discharge of an otherwise qualified employee because of such individual's disability. 42 U.S.C. § 12112(a). Courts evaluate discrimination claims predicated upon the ADA using the burden-shifting analysis developed to examine Title VII employment discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57–58 (4th Cir.1995); *Glidden v. County of Monroe*, 950 F.Supp. 73, 75 (W.D.N.Y.1997).

■ Plaintiff must first establish a *prima facie* case of disability discrimination which requires her to show that: (1) she is "disabled" within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she suffered adverse employment action because of her disability. *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383

(2d Cir.1996); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y. 1996). If plaintiff succeeds in establishing her *prima facie* case, "the burden of production" shifts to the employer to articulate a legitimate, non-discriminatory reason for its conduct. *St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 113 S.Ct. 2742. If the employer adequately articulates such, any inference or presumptions of disability discrimination vanish and the plaintiff retains the ultimate burden of proving that the proffered rationale is pretextual and that the employer was discriminatorily motivated. *Id.* at 509–511, 113 S.Ct. 2742.

■ To demonstrate pretext and defeat an employer's properly supported summary judgment motion in an employment discrimination action, a plaintiff must produce "not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason'" for the actions of which plaintiff complains. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996), (*quoting Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994)); *see also, St. Mary's Honor Center v. Hicks*, 509 U.S. at 515, 113 S.Ct. 2742.

To survive a summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that she is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)–(C).

■ In the instant case, plaintiff alleges a vague back injury. A physical impairment, however, standing alone, does not necessarily constitute a disability under

the ADA. *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 703 (S.D.N.Y.1997). In fact, a physical impairment "may affect an individual's life without becoming disabling." *Id.* at 703. Therefore, plaintiff must demonstrate that the physical impairment "substantially limits" one or more "major life activities." It does not appear to me that she has successfully accomplished this.

The ADA does not define "substantially limits" or "major life activities." However, the regulations promulgated by the EEOC are instructive. To be substantially limited under the ADA, an individual must be "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1)(I)–(ii). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). *See also Sutton v. United Airlines, Inc.*, —— U.S. ——, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999).

The three factors to be considered when determining whether an impairment substantially limits a major life activity are: (1) "[t]he nature and severity of the impairment"; (2) "[t]he duration or expected duration of the impairment"; and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)–(iii).

█ The medical evidence relating to plaintiff's condition while at Sears was simply that of a lumbar strain which may have presented some difficulties for her in

working, but there is no evidence and no medical opinion that she was unable to work.[5] If the ADA and Human Rights Law can be read that broadly, anybody with an injury or back problem could be covered by these statutes, and I do not believe that to be the case. In sum, Muszak has failed to demonstrate that she is disabled as defined by the ADA, and, therefore, has failed to establish a *prima facie* case.

█ Even if plaintiff is deemed to have established a *prima facie* case, she has not adequately rebutted Sears' stated reasons for terminating her employment. Sears maintains that it adhered to its Workplace Violence Policy and terminated plaintiff because of her involvement in the altercation with Ms. Isgro on January 5, 1997. This explanation appears supported. Plaintiff counters with nothing but her own suppositions concerning discrimination.

For all of these reasons, Sears' motion for summary judgment on plaintiff's fifth cause of action is granted, and plaintiff's ADA claim is dismissed.

**2. Refusal to Reasonably Accommodate Under the Human Rights Law**

Unlike the ADA, until 1998, the HRL did not impose upon private employers the duty to "reasonably accommodate" an employee's disability. *Hendler v. Intelecom USA, Inc.*, 963 F.Supp. 200, 211 (E.D.N.Y. 1997) (holding that there is no basis in the statute or case law interpreting the HRL to conclude that a private employer is required to provide reasonable accommodation to employees with disabilities). Indeed, no clearer expression of the absence of any duty for reasonable accommodation under the HRL may be had than the recent amendment to the HRL providing, for the first time, that the HRL would

---

5. Plaintiff relies on paragraph 11 of her unsworn October 2, 1998 statement (Dkt # 24) as sufficient to bring her within the definition of the statutes. Notwithstanding the fact that this statement is not in a form permitted by

FED.R.CIV.P. 56(e), it still fails to defeat Sears' motion because it is conclusory and unsupported by the limited medical records before the Court.

impose an affirmative obligation on private employers to provide reasonable accommodation to employees. New York Executive Law § 296. Because this amendment did not take effect until January 1, 1998 and because the acts which form the basis of the complaint in this action all occurred well before that date, Sears' motion on plaintiff's second cause of action is granted and that cause of action is dismissed.

## C. The Retaliation Claims

### 1. Title VII

Absent direct proof, "[t]he order and allocation of burdens of proof in retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green* ..." *Sumner v. U.S. Postal Service*, 899 F.2d 203, 208 (2d Cir.1990) (citations omitted). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show (1) "protected participation or opposition *under Title VII* known by the alleged retaliator," (2) "an employment action disadvantaging the person engaged in the protected activity," and (3) "a causal connection between the protected activity and the disadvantageous employment action." *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.1987) (emphasis added), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995).

With respect to plaintiff's claim that Sears violated Title VII because it retaliated against her in response to her request for an accommodation for her alleged disability, Sears' motion must be granted for a variety of reasons.

I note initially that a Title VII retaliation claim [6] must be for actions protected by Title VII, and, quite simply (unlike the ADA that has its own retaliation prohibition [7]), Title VII does not protect a request for an accommodation on the basis of an alleged disability. *See Butterfield v. New York*, 96–CV–5144, 1998 WL 401533, * 13 (S.D.N.Y. July 15, 1998) (holding that a plaintiff, alleging a disability, fails to state a claim under Title VII because he is not a member of a protected class under that statute).

Plaintiff belatedly acknowledges these principles, but contends that her claim is premised upon the ADA, not Title VII although Title VII was the only cited authority for the claim. Plaintiff's counsel maintains that the erroneous citation to Title VII should not defeat the retaliation claim because the amended complaint also generally alleges that the retaliation was due to disability. (Amended Complaint, ¶ 69). However, Sears was entitled to know on which statutes plaintiff relied. Plaintiff claimed jurisdiction for this claim under Title VII, and never amended her claim to invoke the ADA's retaliation provision. It is simply a claim that is not within the ambit of Title VII.

Even if the claim were to survive the foregoing deficiency, plaintiff fails to state a *prima facie* case of retaliation. Plaintiff relies heavily on the proximity between her 1996 request for accommodation and her 1997 termination, because she has little else on which to rely. However, temporal proximity, without more, is not necessarily sufficient to raise a triable question of fact. *See Johnson v. Univ. of Wisconsin–Eau Claire*, 70 F.3d 469, 480–481 (7th Cir.1995) (noting that timing alone does not create a genuine issue of material fact); *Hoeppner v. Crotched Mountain Rehabilitation Ctr.*, 31 F.3d 9, 17 (1st Cir. 1994) (affirming summary judgment on retaliation claim because plaintiff's speculation along with merely a scintilla of evidence of pretext is insufficient); *Wrenn v. Ledbetter*, 697 F.Supp. 483, 486 (N.D.Ga.

---

**6.** Paragraph 70 of the Amended Complaint provides: "The retaliatory action ... violated the provisions of Title VII and 42 U.S.C. § 2000–e et seq."

**7.** Americans With Disabilities Act, 42 U.S.C. § 12203.

1988) (granting summary judgment where the only evidence of causal link was the chronology of events), *aff'd*, 880 F.2d 420 (11th Cir.1989), *cert. denied*, 493 U.S. 1075, 110 S.Ct. 1123, 107 L.Ed.2d 1030 (1990). Moreover, by plaintiff's own allegations, the accidents that led to her disability occurred in September 1995 and February 1996, many months before her termination, and she was terminated promptly after the intervening altercation with Ms. Isgro.

Plaintiff's defense is simply that the assault incident never happened. Plaintiff contends, therefore, that relying on the incident was pretextual, and her termination must have been based on her request for accommodation. Plaintiff's logic is flawed. Plaintiff's mere denial that the assault occurred does not create an issue of fact sufficient to defeat Sears' motion. Plaintiff has failed to show the requisite causal connection between the protected activity and her subsequent termination.

■ Lastly, even assuming *arguendo* that a *prima facie* case had been established, Sears has substantially satisfied its burden of articulating and producing evidence of a legitimate non-discriminatory reason for its decision to terminate plaintiff (because of her altercation with Ms. Isgro), thereby vitiating any inference or presumption of discrimination. In the final analysis, there is simply no evidence before the court that Sears' rationale supporting its decision to terminate plaintiff was pretextual or that the decision was motivated by improper animus.

For all of these reasons, Sears' motion on plaintiff's sixth cause of action is granted and that cause of action dismissed.

### 2. The HRL

Plaintiff's claim that Sears violated the HRL because it retaliated against her in response to her request for an accommodation for her alleged disability must be dismissed as well for many of the same reasons that the Title VII claim fails. In addition, for the reasons outlined in section B(2), *supra*, the HRL did not protect a request for an accommodation on the basis of an alleged disability before January 1, 1998. Therefore, Sears' motion on plaintiff's third cause of action is granted and that cause of action dismissed.

### CONCLUSION

Defendant's motion for summary judgment is granted, and the complaint is dismissed with prejudice.

IT IS SO ORDERED.